Philip D. Stern
Andrew T. Thomasson
**STERN*THOMASSON, LLP**
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1329
(973) 379-7500
(855) 479-9969(FAX)
Andrew@sternthomasson.com

Daniel A. Edelman
Cathleen M. Combs
**EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
312-739-4200
312-419-0379 (FAX)
Email: courtecl@edcombs.com

*Attorneys for Plaintiffs, Angel Rivera and
Angela Rivera, and all others similarly
situated*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANGEL RIVERA, an individual; and ANGELA RIVERA, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC., a Utah Corporation; and JOHN AND JANE DOES 1 THROUGH 25,<br><br>Defendants. | CASE NO.: 3:16-cv-03112-PGS-TJB<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, ANGEL RIVERA and ANGELA RIVERA ("Plaintiffs") on behalf of themselves and all others similarly situated, and demanding a trial by jury, brings this action for the illegal practices of Defendants, SELECT PORTFOLIO SERVICING, INC. ("SPS") and JOHN AND JANE DOES 1 THROUGH 25 (collectively "Defendants"), and allege the following:

# I. PARTIES

1.　　　ANGEL RIVERA is a natural person.

2.　　　At all times relevant to this lawsuit, ANGEL RIVERA was a citizen of the State of New Jersey and resided in the Township of Manchester, Ocean County, New Jersey.

3.　　　ANGELA RIVERA is a natural person.

4.　　　At all times relevant to this lawsuit, ANGELA RIVERA was a citizen of the State of New Jersey and resided in the Township of Manchester, Ocean County, New Jersey.

5.　　　At all times relevant to this complaint, SPS is a corporation existing pursuant to the laws of the State of Utah.

6.　　　SPS maintains its principal business address at 3815 South West Temple, Salt Lake City, Utah.

7.　　　SPS is a "special servicer" of residential mortgage loans and seeks rating as such from rating agencies such as Fitch and S&P in order to obtain "special servicing" business.

8.　　　In mortgage industry jargon, a "special servicer" is a servicer that specializes in handling delinquent and defaulted mortgage loans.

9.　　　According to Fitch's rating opinion, as of June 30, 2015, SPS had a special servicing portfolio that consisted of 33,895 residential mortgage loans totaling $4.8 billion.

10.　　　SPS regularly acquires servicing of loans that are delinquent or in default at the time of such acquisition.

11.　　　SPS acquires servicing of portfolios or groups of similar defaulted loans, rather than individual loans.

12.　　　SPS collects, and attempts to collect, delinquent and defaulted mortgage loans incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf

of creditors using the U.S. Mail, telephone, and Internet.

13.     SPS is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to plaintiffs. Plaintiffs will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

15.     The Plaintiffs are informed and believe, and on that basis allege, that defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted, and, with knowledge that such practices were contrary to law, acted consistent with, oversaw, and engaged in the illegal policies and procedures, used by themselves and SPS employees that are the subject of this complaint. Those defendants personally control and engaged in the illegal acts, policies, and practices utilized by SPS and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

## II.  JURISDICTION & VENUE

16.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§1331, 1337.

17.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims of Plaintiff occurred within this federal judicial district, and because the Defendants are subject to personal jurisdiction in the State of New Jersey at the time this action is commenced.

### III.  PRELIMINARY STATEMENT

18.     Plaintiffs, on their own behalf and on behalf of the class they seek to represent, bring this action for the illegal practices of Defendants which include, *inter alia*, using false, deceptive, misleading, unfair, and unconscionable practices in connection with their attempt to collect an alleged debt from Plaintiffs and others.

19.     Plaintiffs allege that Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").

20.     The FDCPA regulates the behavior of debt collectors attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) & 1692(b). Consequently, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes omitted); *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 996 (3d Cir. 2011); 15 U.S.C. § 1692(e).

21.     The Act is not concerned with whether the consumer owes the debt, rather, "[a] basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007)(internal citations omitted).

22.     "Congress also intended the FDCPA to be self-enforcing by private attorney

generals." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

23.     The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455.

24.     Except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

25.     In prohibiting deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. §§ 1692e(1)-(16). Among the *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); false representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, 15 U.S.C. §1692e(2)(B); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

26.     To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any

debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section are the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f(1).

27.     A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973).

28.     The Plaintiffs seek statutory damages, attorney's fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA and all other common law or statutory regimes. The Plaintiffs request an award of statutory, common law, punitive, and/or actual damages payable by Defendants.

## IV.  FACTS CONCERNING PLAINTIFFS

29.     Plaintiffs obtained a $328,000 mortgage loan ("BoA Obligation") in 2004. Copies of the note and mortgage are attached as **Exhibits A-B**.

30.     The loan was  primarily for personal, family, or household purposes. Specifically, it had been obtained for the purpose of paying for plaintiffs' residence.  The mortgaged property was used by plaintiff as their residence.

31.     The alleged BoA Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

32.     Plaintiffs are each, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

33.    By early 2007, plaintiffs encountered financial difficulties and were unable to pay their mortgage loan on time.

34.    On March 23, 2007, a foreclosure lawsuit was filed on the mortgage, *Mortgage Electronic Reg. System v. Rivera*, F 8076 07 (Essex Co. Super. Ct.).

35.    The loan was accelerated prior to March 23, 2007.

36.    Three days later, on March 26, 2007, Mr. and Mrs. Rivera filed a Chapter 13 proceeding.  No. 07-14068-NLW (D.N.J.).

37.    Plaintiffs were unable to rehabilitate themselves, and the bankruptcy was converted to a Chapter 7 in July 2009.

38.    In October 2009, plaintiffs obtained a discharge, which included the BoA Obligation, which had been duly scheduled.  (**Exhibit C**)

39.    The property securing the loan, at 56 Cumberland Avenue, Verona, NJ ("Verona Property"), was abandoned in the bankruptcy. (See **Exhibit D**).

40.    The Verona Property was the plaintiffs' residence prior to its abandonment.

41.    At the time of the bankruptcy, the note and mortgage was allegedly owned by Countrywide Home Loans, as shown by the proof of claim attached as **Exhibit E**.

42.    Bank of America acquired the Countrywide organization in 2008.

43.    On or about July 9, 2015, the BoA Obligation was transferred to SPS for collection.

44.    On information and belief, based on statements by SPS, the creditor was not SPS. SPS claimed the creditor was "The Bank of New York Mellon, f/k/a the Bank of New York, as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2004-7".

45.    The BoA Obligation was in default at the time servicing was transferred to SPS.

46.     SPS contended the BoA Obligation has been in default at all times since it first became involved with it.  (Cmplt., ¶51)

47.     On or about July 9, 2015, SPS mailed Plaintiffs the notice attached as **Exhibit F**.

48.     **Exhibit F** is a form document.  It is sent by computerized processes when servicing of a loan is acquired by SPS.

49.     On July 24, 2015, SPS mailed Plaintiffs the notice attached as **Exhibit G**.

50.     **Exhibit G** was the only document SPS sent in an attempt to provide Plaintiffs the "notice of debt" required by 15 U.S.C. §1692g.

51.     It is the standard practice of SPS to use a document in the form of **Exhibit G** as the only document it uses in an attempt to provide the "notice of debt" required by 15 U.S.C. §1692g.

52.     **Exhibit G** was not sent within five days after **Exhibit F**.

53.     It is the practice of SPS to send a document in the form of **Exhibit G** more than five days after a document in the form of **Exhibit F**.

54.     In late July 2015, SPS mailed plaintiffs the monthly statement attached as **Exhibit H**.

### V.  COUNT I – CLASS CLAIM

55.     Plaintiffs incorporate the preceding paragraphs.

56.     Defendants violated 15 U.S.C. §1692g by not providing a "notice of debt" on or before a date five days after **Exhibit F.**

57.     As a result, plaintiffs were injured, in that they were deprived of information required by law.

58.     Section 1692g(a)  provides:

**§ 1692g. Validation of debts**

**(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

## CLASS ALLEGATIONS

59.     Plaintiffs bring this claim on behalf of themselves and  all other persons similarly situated pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

60.     The class consists of (a) all natural persons, (b) to whom SPS did not mail a written communication in the form represented by **Exhibit G** on or before a date five days after sending a letter in the form represented by **Exhibit F** (c) where **Exhibit F** was mailed on or after a date beginning one year and five days prior to the filing of this action, and (d) ending 21 days after the filing of this action.

61.     On information and belief, based on the size of SPS's operations, its use of

standardized form documents, the class exceeds 40 persons, and, therefore, is so numerous that joinder of all members is not practicable.

62.      The identities of all class members are readily ascertainable from SPS's business records and the records of those businesses and third-party entities on whose behalf it attempts to collect debts.

63.      Excluded from the class are the defendants and all officers, members, partners, managers, directors, and employees of the defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

64.      There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  The principal common issues are whether SPS's written communications, in the form attached as **Exhibit G**, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g.

65.      Plaintiffs' claims are typical of the class members, as all are based upon the same facts and legal theories.

66.      Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions.  Plaintiffs are committed to vigorously litigating this matter.  Plaintiffs have no interests that are adverse to absent class members. Neither plaintiffs nor their attorneys have any interests which might cause them not to vigorously pursue this action.

67.      A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication

of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to members of the class predominate over any questions affecting only an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68.     Based on discovery and further investigation (including, but not limited to, defendants' disclosure of class size and net worth), Plaintiffs may, in addition to moving for class certification using modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the Court enter judgment in their favor and in favor of the class as follows:

(i)     An order certifying that this claim may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiffs and the undersigned counsel to represent the class;

(ii)    An award of statutory damages for plaintiffs and the class pursuant to 15 U.S.C. § 1692k(a)(2);

(iii)   Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. §1692k(a)(3); and

(iv)    For such other and further relief as may be just and proper.

## VI.  COUNT II – CLASS CLAIM

69.     Plaintiffs incorporate the preceding paragraphs.

70.    **Exhibit F** falsely asserted that "late charges," which "vary from day to day," would continue to accrue on the BoA Obligation.

71.    Where, as here, a loan has been accelerated no late charges may be collected because there are no further "monthly payments." *State Mut. Building and Loan Ass'n of New Jersey v. Batterson,* 77 N.J.L. 57, 71 A. 115 (Sup.Ct.1908); *Crest Sav. and Loan Ass'n v. Mason,* 243 N.J.Super. 646, 581 A.2d 120 (Ch. Div. 1990); *Manhattan & S. S. & L. Ass'n v. Massarelli,* 42 A. 284 (N.J.Ch. 1899); *Centerbank v. D'Assaro,* 158 Misc.2d 92, 600 N.Y.S.2d 1015, 1017 (Sup. Ct. 1993) ("late charges for nonpayment of installments claimed to be due after acceleration cannot be collected").

72.    The reference to late charges therefore misstated the amount of the debt and was false and misleading, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692g.

73.    As a result, plaintiffs were injured, in that they were deprived of information required by law, and received inaccurate information when the law requires accurate information.

74.    Section 1692e provides:

**§ 1692e.        False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

75.     Section 1692f provides:

**§ 1692f.     Unfair practices [Section 808 of P.L.]**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

## CLASS ALLEGATIONS

76.     Plaintiffs bring this claim on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

77.     The class consists of (a) all natural persons, (b) to whom SPS sent a letter referring to incurring late charges (c) on a loan that had been accelerated (d) where the letter was mailed on or after a date beginning one year and five days prior to the filing of this action, and (d) ending 21 days after the filing of this action.

78.     On information and belief, based on the size of SPS's operations, and its use of standardized form documents, the class exceeds 40 persons, and, therefore, is so numerous that joinder of all members is not practicable.

79.     The identities of all class members are readily ascertainable from SPS's business records and the records of those businesses and third-party entities on whose behalf it attempts to collect debts.

80.     Excluded from the class are the defendants and all officers, members, partners,

managers, directors, and employees of the defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

81.    There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal common issues are whether claiming a right to late charges on a debt that had been accelerated is false and misleading.

82.    Plaintiffs' claims are typical of the class members, as all are based upon the same facts and legal theories.

83.    Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have no interests that are adverse to absent class members. Neither plaintiffs nor their attorneys have any interests which might cause them not to vigorously pursue this action.

84.    A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to members of the class predominate over any questions affecting only an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

85.    Based on discovery and further investigation (including, but not limited to,

defendants' disclosure of class size and net worth), plaintiffs may, in addition to moving for class certification using modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the Court enter judgment in their favor and in favor of the class as follows:

(i)      An order certifying that this claim may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiffs and the undersigned counsel to represent the class;

(ii)     An award of statutory damages for plaintiffs and the class pursuant to 15 U.S.C. § 1692k(a)(2);

(iii)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. §1692k(a)(3); and

(iv)    For such other and further relief as may be just and proper.

## VII.  COUNT III  – INDIVIDUAL CLAIM

86.      Plaintiffs incorporate the preceding paragraphs.

87.      Defendants violated 15 U.S.C. §1692e, 1692e(2) and 1692e(10) by attempting to collect a discharged debt.

88.      As a result, plaintiffs were injured, in that they were deprived of the "fresh start" to which they are entitled under the Bankruptcy Code, and in that they were furnished with inaccurate information, in violation of the FDCPA.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the Court enter judgment in their favor as follows:

(i)    An award of statutory damages for plaintiffs pursuant to 15 U.S.C. § 1692k(a)(2);

(ii)    An award of actual damages;

(iii)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. §1692k(a)(3); and

(iv)    For such other and further relief as may be just and proper.

## VIII.  JURY DEMAND

Plaintiffs hereby demand that this case be tried before a Jury.

_s/Philip D. Stern_

Dated: September   , 2016

Philip D. Stern
STERN•THOMASSON LLP

_s/ Andrew T. Thomasson_

Andrew T. Thomasson
STERN•THOMASSON LLP
**STERN\*THOMASSON, LLP**
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1329
(973) 379-7500
(855) 479-9969(FAX)
Andrew@sternthomasson.com

Daniel A. Edelman
Cathleen M. Combs
**EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.**
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
312-739-4200
312-419-0379 (FAX)
Email: courtecl@edcombs.com

_Attorneys for Plaintiffs, Angel Rivera
and Angela Rivera, and all others similarly_

*situated*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

We, Philip D. Stern and Andrew T. Thomasson, hereby certify that to the best of our knowledge the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

s/Philip D. Stern

Dated: September    2016

Philip D. Stern
STERN•THOMASSON LLP

s/ Andrew T. Thomasson

Andrew T. Thomasson

Attorneys for Plaintiffs, Angel Rivera and Angela Rivera, and all others similarly situated

**EXHIBIT A**

Prepared by: CAROL L. EDWARDS

LOAN #: ████6963

# NOTE

JULY 13, 2004             VERONA TWP             NEW JERSEY
[Date]                    [City]                 [State]

56 CUMBERLAND AVE, VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 328,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
FULL SPECTRUM LENDING, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    7.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   FIRST        day of each month beginning on
SEPTEMBER 01, 2004 . I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on AUGUST 01, 2034        , I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 2,349.83

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal
is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

I may make a Full or Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more
of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I
must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment at any time.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a Partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

● BC-NEW JERSEY FIXED RATE NOTE
2D863-NJ   (10/02)(d)                              Page 1 of 3                              Initials: _____



* 2 3 9 9 1 *

* 0 8 4 6 8 8 9 6 3 0 0 0 0 0 2 D 8 8 3 *

LOAN #: ████6963

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. APPLICABLE LAW
I agree that this agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the real property is located. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

● BO-NEW JERSEY FIXED RATE NOTE
2D685-NJ    (10/02)                                         Page 2 of 3                                         Initials: ___

LOAN #: ████6963

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
ANGELA RIVERA          -Borrower    ANGEL RIVERA          -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                         -Borrower

(Sign Original Only)

Witnessed by:

_____

Mary K. Haann
Attorney at Law State of NJ

✿ BC-NEW JERSEY FIXED RATE NOTE
2D383-NJ    (10/02)                    Page 3 of 3

**EXHIBIT B**

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING

610  064598963  D2 001 001



DOLLINGER & OSTROWSKY
293 Eisenhower Pkwy. Suite 100
Livingston, NJ 07039

[Space Above This Line For Recording Data]

M-22706                                          0006458695307004
[Escrow/Closing #]                               [Doc ID #]

# MORTGAGE

MIN 1000157-0003638128-9

Instr#    1064144           Carole A. Graves
Recorded/Filed  BB   2      Essex County Register
07/28/2004  11:47:5 Bk 9908 Pg 758 #Pgs  14  RR

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JULY 13, 2004          , together with all Riders to this document.
(B) "Borrower" is
ANGELA RIVERA, AND ANGEL RIVERA, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
FULL SPECTRUM LENDING, INC.
Lender is a CORPORATION
organized and existing under the laws of CALIFORNIA
Lender's address is
4500 Park Granada, Calabasas, CA 91302
(E) "Note" means the promissory note signed by Borrower and dated  JULY 13, 2004          . The Note states that Borrower owes Lender
THREE HUNDRED TWENTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 328,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  AUGUST 01, 2034

NEW JERSEY-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 10                                                          Initials
-6A(NJ) (0005)    CHL (08/00)(d)    VMP MORTGAGE FORMS - (800)521-7291           Form 3031  1/01
CONV/VA





* 2 3 8 9 1 *                                      * 0 6 4 5 8 6 9 5 3 0 0 0 0 0 2 0 0 6 A *

DOC ID #: 0006458696307004

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☒ 1-4 Family Rider
☐ V.A. Rider    ☐ Biweekly Payment Rider    ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY    of    ESSEX    :
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:    which currently has the address of
56 CUMBERLAND AVE, VERONA
[Street/City]
New Jersey    07044    ("Property Address"):
[Zip Code]

Initials: [signature]

XXX -6A(NJ) (0005)    CHL (08/00)    Page 2 of 10    Form 3031 1/01

Case 3:16-cv-03112-PGS-TJB    Document 21    Filed 10/14/16    Page 25 of 59 PageID: 156
Case 3:16-cv-03112-PGS-TJB    Document 1-3    Filed 05/31/16    Page 8 of 22 PageID: 38
Case 07-14068-NLW    Claim 2-1    Filed 04/17/07    Desc Main Document    Page 7 of 21

DOC ID #: 0006458696307004

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment

-BA(NJ) (0005)    CHL (08/00)    Page 3 of 10    Initials: _____    Form 3031 1/01

DOC ID #: 0006458696307004

that the cost of the insurance coverage so obtained might significantly exceed the cost of Insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for

Initials _____

-6A(NJ) (0006)    CHL (08/00)    Page 6 of 10    Form 3931 1/01

DOC ID #: 0006458696307004

enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.



@@@ -6A(NJ) (0005)    CHL (08/00)    Page 6 of 10    Form 3031  1/01

DOC ID #: 0006458696307004

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and

-6A(NJ) (0005)      CHL (08/05)      Page 7 of 10      Initials ___      Form 3031 1/01

DOC ID #: 0006458696307004

agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest

Initials

DOC ID #: 0006458696307004

in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to

Case 3:16-cv-03112-PGS-TJB    Document 21    Filed 10/14/16    Page 31 of 59 PageID: 162
Case 3:16-cv-03112-PGS-TJB    Document 1-3    Filed 05/31/16    Page 15 of 22 PageID: 45
Case 07-14068-NLW    Claim 2-1    Filed 04/17/07    Desc Main Document    Page 14 of 21

DOC ID #: 0006458696307004

reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
ANGELA RIVERA                    -Borrower

_____ (Seal)
ANGEL RIVERA                     -Borrower

Mary K. Haenn
Attorney at Law State of NJ

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

STATE OF NEW JERSEY,    Essex    County ss:

On this 13TH day of July 2004, before me, the subscriber, personally appeared

Angela Rivera & Angel Rivera

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

Notary Public

Mary K. Haenn
Attorney at Law State of NJ

6A(NJ) (0005)    CHL (08/00)    Page 16 of 16    Form 3031 1/01

[Space Above This Line For Recording Data]

# 1-4 FAMILY RIDER
(Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
CAROL L. EDWARDS

M-22706                    0006458696307004
[Escrow/Closing #]            [Doc ID #]

THIS 1-4 FAMILY RIDER is made this THIRTEENTH        day of JULY, 2004    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
FULL SPECTRUM LENDING, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
56 CUMBERLAND AVE
VERONA, NJ 07044
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 3                                         Initials: 
-57R (0008)    CHL (09/00)(d)    VMP MORTGAGE FORMS - (800)521-7291                Form 3170 1/01
CONV/VA



DOC ID #: 0006458696307004

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver

-57R (0008)    CHL (08/00)          Page 2 of 3                    Form 3170 1/01

DOC ID #: 0006458696307004

appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
ANGELA RIVERA                    - Borrower

_____ (Seal)
ANGEL RIVERA                     - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

-57R (0008)        CHL (08/00)        Page 3 of 3        Form 3170 1/01

TITLE INSURANCE COMMITMENT

Chicago Title Insurance Company
22706

SCHEDULE A
NUMBER 4
(CONTINUED)
LEGAL
DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Verona, County of Essex State of New Jersey:

Being commonly known as Lot(s) 12 in Block(s) 87 on the Tax Map, Township of Verona, Essex County, New Jersey and more commonly known as 56 Cumberland Avenue.

Conveyed to the borrowers by Deed from Vincent Tulino, dated August 01, 1995, recorded August 23, 1995 in the Essex County Register's office in Deed Book 5379 at Page 764.

## EXHIBIT C

Case 3:16-cv-03112-PGS-TJB    Document 21    Filed 10/14/16    Page 37 of 59 PageID: 1068
Case 07-14068-NLW    Doc 43    Filed 10/19/09    Entered 10/19/09 12:13:36    Desc
Discharge of Debtor Chap 7 and    Page 1 of 2

B18 (Official Form 18) (12/07)

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
MLK Jr Federal Building
50 Walnut Street
Newark, NJ 07102

Case No.: 07−14068−NLW
Chapter: 7
Judge: Novalyn L. Winfield

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

Angela M Rivera
56 Cumberland Avenue
Verona, NJ 07044

Angel E Rivera
56 Cumberland Avenue
Verona, NJ 07044

Social Security No.:
xxx−xx−1535

xxx−xx−3882

Employer's Tax I.D. No.:

# DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED**:

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: October 19, 2009

Novalyn L. Winfield
United States Bankruptcy Judge

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

B18 (Official Form 18) (12/07) − Cont.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

**Collection of Discharged Debts Prohibited**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

**Debts That are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

**Debts that are Not Discharged.**

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

**EXHIBIT D**

TO:                    Clerk              Case No. 07-14068-NLW
US Bankruptcy Court, DNJ                  :
    Newark, NJ                     :      Debtor(s): RIVERA, Angela M. & Angel E.

### *INFORMATION FOR NOTICE OF ABANDONMENT*

      Barbara A. Edwards, Trustee, has filed a notice of intention to abandon certain property described below as being of inconsequential value to the estate. If any creditor or other party in interest has any objection to the proposed abandonment, the objection and a request for a hearing on such objection shall be in writing, served upon the trustee and filed with the Clerk of the United States Bankruptcy Court.

      Such objection and request shall be filed with the Clerk and served upon the trustee no later than (date fixed by the Clerk).

      In the event an objection is timely filed, a hearing thereon will be held on (date and location to be fixed by the Court).

      If no objection is filed with the Clerk and served upon the Trustee on or before (above date) the abandonment will take effect on (date fixed by Clerk).

      The description of the property and the liens and exemptions are as follows:

| DESCRIPTION OF THE PROPERTY TO BE ABANDONED | LIENS ON THE PROPERTY OF DEBTOR (Including amount claimed due) | AMOUNT OF EQUITY CLAIMED AS EXEMPT BY DEBTOR |
|---|---|---|
| Real property located at 56 Cumberland Avenue, Verona, NJ having a fair market value of $370,000.00 as set forth in a Market Analysis dated 6/16/2009 prepared by Pat Walsh of RE/MAX House Values, 293 Route 206 North, Flanders, NJ. | Mortgage held by Countrywide Home Loans, 450 American Street, Simi Valley, CA in the amount of $346,531.65. | -0- |

Requests for additional information about the property to be abandoned should be directed to:

BARBARA A. EDWARDS, c/o Muscarella, Bochet, Edwards & D'Alessandro, P.C., The Vanguard Building, 21-00 Route 208 South, Fair Lawn, NJ 07410 (201)796-3100

SUBMITTED BY: /s/  *Barbara A. Edwards*                POSITION: Interim Trustee
          BARBARA A. EDWARDS                    Tele: (201)796-3100

FOR CLERK'S USE ONLY:
                           TYPE OF TASK: _11_
      Form _BL_ Statement _ABL_ LOCATION _____ SPECIAL GROUP_____
      TASK MEETING DATE ____/___/___ TIME:___ A/P/N_____

Form 154 – ntcabn72

## UNITED STATES BANKRUPTCY COURT

District of New Jersey  
MLK Jr Federal Building  
50 Walnut Street  
Newark, NJ 07102

Case No.: 07–14068–NLW  
Chapter: 7  
Judge: Novalyn L. Winfield

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

Angela M Rivera  
56 Cumberland Avenue  
Verona, NJ 07044

Angel E Rivera  
56 Cumberland Avenue  
Verona, NJ 07044

Social Security No.:  
xxx–xx–1535

xxx–xx–3882

Employer's Tax I.D. No.:

## NOTICE OF PROPOSED ABANDONMENT

Barbara Edwards, Trustee for the above–captioned case, has filed a notice of intent to abandon certain property described below as being of inconsequential value to the estate.

If any creditor or other party in interest has an objection to the proposed abandonment, the objection and a request for a hearing on such objection shall be in writing, served upon the Trustee and filed with the Clerk of the United States Bankruptcy Court. Such objection and request shall be filed with the Clerk and served upon the Trustee no later than February 1, 2010.

In the event an objection is timely filed, a hearing will be held before the Honorable Novalyn L. Winfield on

DATE:           2/8/2010  
TIME:           9:00  
COURTROOM:      3D

If no objection is filed with the Clerk and served upon the Trustee on or before February 1, 2010, the abandonment will take effect on the fifth day following the last day to file objections.

The description of the property to be abandoned is as follows:  
Real property located at 56 Cumberland Avenue, Verona, NJ having a fair market value of $370,000.00 as set forth in a Market Analysis dated 6/16/2009 prepared by Pat Walsh of RE/MAX House Values, 293 Route 206 North, Flanders, NJ.

The liens on the property to be abandoned are as follows (including amount claimed due):  
Mortgage held by Countrywide Home Loans, 450 American Street, Simi Valley, CA in the amount of $346,531.65.

The amount of equity claimed as exempt by the debtor is:

−0−

Request for additional information about the property to be abandoned should be directed to the Trustee at:

Barbara Edwards
Muscarella,Bochet,Edwards & D'Aless
The Vanguard Building
21−00 Route 208 S.
Fair Lawn, NJ 07410
(201) 796−3100

or the trustee's attorney (if applicable) at:

Barbara Edwards
Muscarella, Bochet, Edwards & D'Alessand
The Vanguard Building
21−00 Route 208 South
Fair Lawn, NJ 07410
(201) 796−3100

Dated: January 12, 2010
JJW:

James J. Waldron
Clerk

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re:                                    :     Case no.:     07-14068

Angela M. Rivera and                      :     Chapter:           7
Angel E. Rivera
                                          :
          Debtor(s)                       :     Judge:     Novalyn Winfield

---

## CERTIFICATION OF NO OBJECTION

I hereby certify that there have been no objections filed relative to the following Notice of :

☑    Abandonment

❑    Public Sale

❑    Private Sale

❑    Settlement of Controversy

❑    Auctioneer Compensation

Description of Property (if applicable):
     Real property located at 56 Cumberland Avenue, Verona, NJ

Date: June 2, 2010                        JAMES J. WALDRON, Clerk

*Last revised: 1/14/10*

**EXHIBIT E**

| United States Bankruptcy Court, District of New Jersey | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor<br>Angela M. Rivera<br>Angel E. Rivera | Case Number<br>07-14068 - NLW |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request for an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor/Servicer: (Mail Checks to:)<br>Countrywide Home Loans, Inc.<br>Attention:  Bankruptcy Department<br>400 Countrywide Way, Mail Stop SV-46<br>Simi Valley, CA  93065 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br><br>Powers Kirn, LLC<br>P. O. Box 1568<br>Mount Laurel, NJ  08054<br><br>Telephone number: 856-802-1000 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | This Space is for Court Use Only |

| Account or other number by which creditor identifies debtor:<br>▮▮6963 | Check here<br>if this claim | ☐ replaces<br>☐ amends | a previously filed claim, dated:_____ |
|---|---|---|---|

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☒ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☐ Other_____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of SS#:  _____<br>Unpaid compensation for services performed<br><br>from _____ to _____<br>        (date)        (date) |
|---|---|

| 2. Date debt was incurred: 07/13/2004 | 3. If court judgment, date obtained: |
|---|---|

| 4. Total Amount of Claim at Time Case Filed:  $ | $398,047.57 | | | $398,047.57 |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (Total) |

If all or part of your claim is secured or entitled to priority, also complete Items 5 or 7 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

| 5. Secured Claim.<br>☒ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☒ Real Estate    ☐ Motor Vehicle<br>☐ Other_____<br>Value of Collateral:  $ Not established _____<br>Amount of arrearage and other charges at time case filed included in<br>secured claim, if any:  $          $9,921.30<br><br>6. Unecured Nonpriority Claim  $_____<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only a part of your claim is entitled to priority. | 7. Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim.<br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Wages, salaries, and commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(3).<br>☐ Contributions to an employee benefits plan - 11 U.S.C. § 507(a)(4).<br>☐ Up to $2,225* of deposits towards purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|

| 8. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>9. Supporting Documents:  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.<br>10. Date-Stamped Copy:  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space is for Court Use Only |
|---|---|

| Date<br><br>April 17, 2007 | Sign and Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>/s/ William M. E. Powers, III, Attorney/Agent for Claimant |
|---|---|

*Penalty for presenting a fraudulent claim:  Fine up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C.  §§ 153 and 3571.*

Debtor:  Angela M. Rivera
         Angel E. Rivera

Case No:  07-14068 - NLW

Loan No: ▓▓▓6963

## ITEMIZATION OF CLAIM

| Amount | Total Debt at filing: Description | | | | |
|---|---|---|---|---|---|
| $320,919.98 | Principal Balance | | | | |
| $67,206.29 | Interest 1325(a)(5)(B)(ii)  (Applicable where total debt plan) | | | | |
| $388,126.27 | Total | | | | |

| Quantity | Arrears at filing: Description | From (Mo/Yr) | Through (Mo/Yr) | Amt/Mo | Extended |
|---|---|---|---|---|---|
| 3 | Payment(s)  (Principal and Interest Only) | Jan-07 | Mar-07 | $2,349.83 | $7,049.49 |
| | Payment(s)  (Principal and Interest Only) | | | | $0.00 |
| | Payment(s)  (Principal and Interest Only) | | | | $0.00 |
| | Payment(s)  (Principal and Interest Only) | | | | $0.00 |
| | Payment(s)  (Principal and Interest Only) | | | | $0.00 |
| | Payment(s)  (Principal and Interest Only) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charge(s) | | | | $0.00 |
| | Late charges incurred prior to due date | | | | $654.77 |
| | Partial Balance - credit | | | | $0.00 |
| | Escrow Advances | | | | $0.00 |
| | Legal fees and foreclosure costs - Pre-petition | | | | $1,658.15 |
| | Post-petition - legal fee (ie Proof of claim, Plan review or objection) | | | | $150.00 |
| | Other - (Inspection, appraisal, or NSF check charges) | | | | $25.00 |
| | Subtotal | | | | $9,537.41 |
| | Interest to amortize advances  - In re Trabal - Note/Mortgage | | | | $383.89 |
| | Sum to cure arrears | | | | $9,921.30 |

| Amount | Description | | | | |
|---|---|---|---|---|---|
| $388,126.27 | Unpaid Principal with interest | | | | |
| $9,921.30 | Sum to cure arrears | | | | |
| $398,047.57 | Total of Principal Balance + Arrears | | | | |

Note:  The post-petition mortgage payment is $2,349.83

IF LEGAL FEES AND COSTS ARE INCURRED AFTER THIS PROOF OF CLAIM IS FILED, YOUR ACCOUNT WILL BE
ASSESSED THOSE FEES AND COSTS IF LEGALLY PERMISSIBLE IN THE OPINION OF THE LENDER.  IF SUCH FEES
AND COSTS ARE NOT PAID AS PART OF THIS CASE, THEY MAY BE COLLECTED IN THE FUTURE PURSUANT TO
THE TERMS OF YOUR SECURITY INSTRUMENT, THE BANKRUPTCY CODE, AND OTHER APPLICABLE LAW.

Case 07-14068-NLW     Claim 2-1     Filed 04/17/07     Desc Main Document     Page 3 of 21

Debtor:  Angela M. Rivera
         Angel E. Rivera

Case No:  07-14068 - NLW

Loan No: ▆▆▆▆5963

## ITEMIZATION OF CLAIM (Continued)

|  | Advances |  |  |
|---|---|---|---|
| $0.00 | Escrow Advances |  |  |
| $25.00 | Other - (Inspection, appraisal, or NSF check charges) |  |  |
| $1,658.15 | Foreclosure - Legal fees and costs |  |  |
|  |  |  |  |
| $150.00 | Bankruptcy - Legal fee and costs - Post-petition |  |  |
| $1,833.15 | Subtotal of Advances |  |  |
| $383.89 | Interest to amortize advances  - In re Trabal - 1322(e) @ |  | 7.750% |

2007-0531
POWERS KIRN, LLC
9 East Stow Road, Suite C
Marlton, NJ 08053
P.O. Box 1568
Mount Laurel, NJ 08054
856-802-1000
Attorney for Mortgage Electronic Registration Systems, Inc., as nominee for
WP0186

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:                                          :
Angela M. Rivera                                : CASE NO. 07-14068 - NLW
Angel E. Rivera                                 :
                                                : CHAPTER: 13
            **Debtor(s)**                       :
                                                :
                                                :

CERTIFICATION OF SERVICE

I, the undersigned, am a legal assistant with Powers Kirn, LLC, attorneys for Mortgage Electronic Registration Systems, Inc., as nominee for.

On 4/17/07, I served a copy of the Proof of Claim by the following means to:

Angela M. Rivera **DEBTOR**            Angel E. Rivera **DEBTOR**
56 Cumberland Avenue                   56 Cumberland Avenue
Verona NJ 07044-                       Verona, NJ 07044
(Served By First Class Mail)           (Served By First Class Mail)

Marie-Ann Greenberg **TRUSTEE**        Bruce H. Levitt, Esquire **ATTORNEY**
30 Two Bridges Road, Suite 230         76 South Orange Avenue; Suite 305
Fairfield NJ 07004                      South Orange, NJ 07079
(Served by CM/ECF)                     (Served by CM/ECF)

        I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                            /s/ Olivia C. Da Silva
                            Olivia C. Da Silva

DATED: 4/17/07

**EXHIBIT F**

S   S SELECT
        SERVICING, INC.
P O Box 65250
Salt Lake City, UT 84165

Date  07/09/2015                          Re   SPS Loan Number: ████ 0293
                                               Property Address:  56 CUMBERLAND AVE
                                                                  VERONA, NJ  07044

ANGELA RIVERA
ANGEL RIVERA
846 B WINCHESTER CT
MANCHESTER NJ 08759

Dear Customer

We are pleased to inform you that the servicing of your 1st mortgage loan will be transferred from Bank Of America N A to Select
Portfolio Servicing, Inc (SPS) effective 07/16/2015

   • Your prior servicer will stop accepting your mortgage payments after 07/15/2015.  If you have already mailed your
     payment to your prior servicer and it is received after this date, it will be forwarded to SPS for processing.
   • Beginning 07/16/2015, all payments must be remitted to SPS.
   • If you do not receive a billing statement from SPS prior to your next due date, please include the attached temporary
     coupon with your payment.  Please reference your new SPS loan number (see above) on your check.
   • If your prior servicer automatically drafts your monthly payment from your bank account, that service will cease and
     you will have to provide SPS with a completed Authorization for Withdrawal and Direct Payment form (enclosed).
   • If you were provided mortgage life, disability or other types of optional insurance through your prior servicer, these
     services will not be continued.  If you wish to continue these services, you must contact your private insurer.
   • Please call your insurance agent within 15 days to request the mortgagee on your insurance policy be changed to read
     "Select Portfolio Servicing, Inc., its successors and/or assigns".
   • This transfer does not affect any terms or conditions of your loan documents other than terms directly relating to the
     servicing of your loan.

If you have any questions related to the transfer of servicing from your prior servicer, please contact their Customer Service
Department at  1-800-669-6607  Their mailing address is:   PO Box 5170, Simi Valley, CA 93062.

If you were working with your prior servicer on a potential modification, short sale, or other repayment plan, SPS will work with
you to continue this process with minimal disruption.  To continue this process or if you have any questions regarding your loan on
or after 07/16/2015, please contact the SPS Customer Service Department at 1-800-258-8602 Mon - Thu. from 8 a.m. to 11 p.m.
ET; Fri  from 8 a.m. to 9 p.m. ET; and Sat. from 8 a.m. to 2 p.m. ET  You may also access your account information online at
www.spservicing.com.

If you wish to send a written inquiry about your account or dispute any of the information on this statement, please do not include it
with your payment.  All written requests must be sent to the address listed below for Notification of Error/Information Request.  If
you send your Notification of Error/Information Request to any other address, it may not be processed in accordance with our
Customer Service Timelines.

                                                                          Notification of Error/
Important Mailing      General Correspondence    Payment Remittance        Information Request
Addresses:             P O Box 65250             P O Box 65450             P.O. Box 65277
                       Salt Lake City, UT 84165  Salt Lake City, UT 84165  Salt Lake City, UT 84165
                               Please include your loan number on all correspondence.

Esta carta contiene información importante concerniente a sus derechos  Por favor, hágala traducir  Nuestros representantes
bilingües están a su disposición para contestar cualquier pregunta llamando al teléfono 1-800-258-8602 y marque la opción 2

---

Select Portfolio Servicing, Inc                                    PAYMENT COUPON

ANGELA RIVERA
ANGEL RIVERA
56 CUMBERLAND AVE
Loan No  ████ 0293

                                                   Payment Amount        $          .

                                                   Additional Amount     $          .
    SELECT PORTFOLIO SERVICING, INC.
    PO BOX 65450
    SALT LAKE CITY UT  84165-0450                  Total Amount Enclosed $          .

☐ Change of address or telephone?  If so, check here and note changes on back

                                        ████ 0293  00234984  00234984  1

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

YOU ARE HEREBY NOTIFIED THAT THE SERVICING OF YOUR LOAN, THAT IS, THE RIGHT TO COLLECT PAYMENTS FROM YOU, IS BEING ASSIGNED, SOLD OR TRANSFERRED FROM BANK OF AMERICA N A TO SELECT PORTFOLIO SERVICING, INC. EFFECTIVE 07/16/2015. THE ASSIGNMENT, SALE OR TRANSFER OF THE SERVICING OF THE MORTGAGE LOAN DOES NOT AFFECT ANY TERM OR CONDITION OF THE MORTGAGE INSTRUMENTS, OTHER THAN THE TERMS DIRECTLY RELATED TO THE SERVICING OF YOUR LOAN.

EXCEPT IN LIMITED CIRCUMSTANCES, THE LAW REQUIRES THAT YOUR PRESENT SERVICER SEND YOU A NOTICE AT LEAST 15 DAYS BEFORE THE EFFECTIVE DATE OF TRANSFER OR AT CLOSING. YOUR NEW SERVICER MUST ALSO SEND YOU A NOTICE NO LATER THAN 15 DAYS AFTER THE EFFECTIVE DATE OR AT CLOSING.

YOU SHOULD ALSO BE AWARE OF THE FOLLOWING INFORMATION, PURSUANT TO SECTION 6 OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) (12 U.S.C. SECTION 2605):

DURING THE 60-DAY PERIOD FOLLOWING THE EFFECTIVE DATE OF THE TRANSFER OF THE LOAN SERVICING, A LOAN PAYMENT RECEIVED BY YOUR OLD SERVICER BEFORE ITS DUE DATE MAY NOT BE TREATED BY THE NEW LOAN SERVICER AS LATE, AND A LATE FEE MAY NOT BE IMPOSED ON YOU.

SECTION 6 OF RESPA (12 U.S.C. 2605) GIVES YOU CERTAIN CONSUMER RIGHTS. IF YOU SEND A "QUALIFIED WRITTEN REQUEST" TO YOUR LOAN SERVICER CONCERNING THE SERVICING OF YOUR LOAN, YOUR SERVICER MUST PROVIDE YOU WITH A WRITTEN ACKNOWLEDGEMENT WITHIN 5 BUSINESS DAYS OF RECEIPT OF YOUR REQUEST. A "QUALIFIED WRITTEN REQUEST" IS A WRITTEN CORRESPONDENCE, OTHER THAN NOTICE ON A PAYMENT COUPON OR OTHER PAYMENT MEDIUM SUPPLIED BY THE SERVICER, WHICH INCLUDES YOUR NAME AND ACCOUNT NUMBER, AND YOUR REASONS FOR THE REQUEST. NOT MORE THAN 30 BUSINESS DAYS AFTER RECEIVING YOUR REQUEST, YOUR SERVICER MUST MAKE ANY APPROPRIATE CORRECTIONS TO YOUR ACCOUNT, AND MUST PROVIDE YOU WITH A WRITTEN CLARIFICATION REGARDING ANY BUSINESS DISPUTE. DURING THIS 30 BUSINESS DAY PERIOD, YOUR SERVICER MAY NOT PROVIDE INFORMATION TO A CONSUMER REPORTING AGENCY CONCERNING ANY OVERDUE PAYMENT RELATED TO SUCH PERIOD OR QUALIFIED WRITTEN REQUEST. HOWEVER, THIS DOES NOT PREVENT THE SERVICER FROM INITIATING FORECLOSURE IF PROPER GROUNDS EXIST UNDER THE MORTGAGE DOCUMENTS.

A BUSINESS DAY IS A DAY ON WHICH THE OFFICES OF THE BUSINESS ENTITY ARE OPEN TO THE PUBLIC FOR CARRYING ON SUBSTANTIALLY ALL OF ITS BUSINESS FUNCTIONS.

SECTION 6 OF RESPA ALSO PROVIDES FOR DAMAGES AND COSTS FOR INDIVIDUALS OR CLASSES OF INDIVIDUALS IN CIRCUMSTANCES WHERE SERVICERS ARE SHOWN TO HAVE VIOLATED THE REQUIREMENTS OF THAT SECTION. YOU SHOULD SEEK LEGAL ADVICE IF YOU BELIEVE YOUR RIGHTS HAVE BEEN VIOLATED.

IF YOU HAVE FILED BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, PLEASE BE ADVISED THAT THIS STATEMENT DOES NOT REPRESENT AND IS NOT INTENDED TO BE A DEMAND FOR PAYMENT. THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. YOU SHOULD CONTACT LEGAL COUNSEL REGARDING YOUR OBLIGATION, IF ANY, TO PAY ON THE MORTGAGE LOAN.

Esta carta le informa que el servicio de su préstamo de hipoteca está siendo transferido a Select Portfolio Servicing, Inc. Varios aspectos importantes de su préstamo corriente pueden cambiarse durante y después de este proceso. Por favor llame a nuestro representante de información y reclamaciones en español al numero de telefono indicado para hablar de estos cambios y cualquier pregunta que usted pueda tener.

FEDERAL FAIR CREDIT REPORTING ACT/ THE FACT ACT

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit score.

IMPORTANT NOTICE CONCERNING PRIVATE MORTGAGE INSURANCE

If your residential mortgage loan has private mortgage insurance (PMI), which is separate and distinct from Homeowners or liability insurance, federal or state law may give you the right to cancel this insurance under some circumstances.  Please contact our Customer Service Department for more information.

AFFILIATE BUSINESS DISCLOSURE

Please note that Select Portfolio Servicing, Inc. may utilize an affiliated company to perform financial services related to your loan account and that Select Portfolio Servicing, Inc., and/or the affiliated company may receive a financial benefit as a result of such relationship.

| | |
|---|---|
| HAS YOUR ADDRESS CHANGED?   IF SO, PLEASE COMPLETE THIS FORM | |
| Mailing Address _____ | |
| City _____ State _____ ZIP _____ | |
| Home Phone _____ Business Phone _____ | |
| All Borrowers' Signatures Required For Address Change | |
| Borrower's Signature | Co-Borrower's Signature |

**EXHIBIT G**

 SELECT SERVICING, inc.

July 24, 2015

 ANGELA RIVERA
ANGEL RIVERA
846 B WINCHESTER CT
MANCHESTER, NJ 08759

Re:  Account Number: ███████0293
     Property Address:  58 CUMBERLAND AVE
                        VERONA, NJ 07044

## VALIDATION OF DEBT NOTICE

Dear Customer(s):

We recently sent you a letter advising you that the servicing of your mortgage loan was transferred to Select Portfolio Servicing, Inc. (SPS) effective 07/16/2015.  As the servicer for your mortgage loan, SPS is collecting the debt on behalf of The Bank of New York Mellon, f/k/a, the Bank of New York, as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2004-7, the investor who currently owns your mortgage loan.  SPS is responsible for sending your monthly mortgage statements, accepting your monthly mortgage payments, collecting any amount due caused by your default under the terms of your Note and Mortgage and generally administering the terms of your mortgage loan.

As of July 24, 2015, our records show that the amount of debt you owe is $578,922.50.

| | |
|---|---|
| Unpaid Principal Balance | $313,748.30 |
| Interest | $160,005.89 |
| Corporate Advances | $16,388.79 |
| Escrow Advance | $88,779.52 |

Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the check for collection. For further information about your account or to request a payoff quote, please contact us at 888-818-6032 or at the address listed below.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt, or any part of it.  If you don't dispute it within that period, we will assume that it is valid.

If you do dispute it, and you wish to receive a copy of the verification of this debt or copy of the judgment, if applicable, you must notify us In writing to that effect, and we will, as required by law, obtain and mail to you, proof of the debt.  And if, within the same period, you request in writing, the name and address of your original creditor, if the original creditor is different from the current investor, we will furnish that information as well.



You may write to us at the following address (please note that this address is different from the address to which you should send your monthly payments):

Select Portfolio Servicing, Inc.
Customer Service Department
PO Box 65277 Salt Lake City, UT 84165-0277

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Customer Service Department. Our toll-free number is 800-258-8602, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hagala traducir. Nuestros representantes bilingues estan a su disposición para contestar cualquier pregunta llamando al teléfono 800-831-0118 y marque la opción 2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.



0008549700049602020D

**EXHIBIT H**

**SPS** SELECT Portfolio SERVICING, inc.
P O Box 65250
Salt Lake City, UT 84165 0250
www.spservicing.com

Mortgage Statement
Statement Date:07/29/2015
Page 1 of 3

Customer Service: (800) 258-8602
Monday - Thursday 8:00AM - 11:00PM ET
Friday 8:00AM - 9:00PM ET
Saturday 8:00AM - 2:00PM ET

*For other important information, see reverse side*

Angela Rivera
Angel Rivera
846 B Winchester Ct
Manchester, NJ 08759

| Account Number | 0293 |
| Property Address | 56 CUMBERLAND AVE VERONA NJ 07044 |
| Loan Due Date | 01/01/2009 |
| Payment Due Date | 08/01/2015 |
| Amount Due | $195,862.63 |

If payment is received after 08/16/2015, $117.49 late fee will be charged

### Explanation of Amount Due
| | |
|---|---|
| Principal | $538.02 |
| Interest | $ 1,811.81 |
| Escrow (Taxes and Insurance) | $0.00 |
| Regular Monthly Payment | $2,349.83 |
| Unpaid Late Charges | $0.00 |
| Other Charges and Fees | $7,875.99 |
| Charges / Fees this Period | $0.00 |
| Past Due Payment(s) | $185,636.81 |
| Unapplied Payment(s) | $0.00 |
| Total Amount Due | $195,862.63 |

### Account Information
| | |
|---|---|
| Interest Bearing Principal | $313,748.30 |
| Deferred Principal | $0.00 |
| Outstanding Principal | $313,748.30 |
| Interest Rate (Fixed) | 7.750% |
| Prepayment Penalty | No |

### Transaction Activity (05/01/2015 to 07/29/2015)
| Date | Description | Principal Balance | Interest | Taxes & Insurance | Late Charges | Other Fees | Expenses Pd by Servicer | Total | Insurance Proceeds |
|---|---|---|---|---|---|---|---|---|---|

Continued On Next Page

### Past Payments Breakdown
| | Paid Last Month | Paid Year To Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $-88,779.52 | $-88,779.52 |
| Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | |
| Total | $-88,779.52 | $-88,779.52 |
| Total Unapplied Balance | | $0.00 |

### Important Messages
We have received and are holding insurance proceeds on your behalf. These funds will be disbursed or applied to your account consistent with the terms of your mortgage. Please call (888) 956-5206 if you have any questions.

¹ This amount is not a payoff quote. If you want a payoff quote, please see instructions on reverse side.

Any transactions that occurred after the statement date noted above will be reflected on your next statement.

This is an attempt to collect a debt. All information obtained will be used for that purpose.

### **Delinquency Notice **
You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure — the loss of your home.

As of July 29, you are 2,400 days delinquent on your mortgage loan.
* Payment due 07/2015  Unpaid payment of $2,349.83
* Payment due 06/2015  Unpaid payment of $2,349.83
* Payment due 05/2015  Unpaid payment of $2,349.83
* Payment due 04/2015  Unpaid payment of $2,349.83
* Payment due 03/2015  Unpaid payment of $2,349.83
* Payment due 02/2015  Unpaid payment of $2,349.83

Total: $195,862.63 due. You must pay this amount to bring your loan current.

SPS has referred your account to an attorney for legal action.

If You Are Experiencing Financial Difficulty: See the back for information about mortgage counseling or assistance. Also, there are a number of options available to assist customers who are experiencing difficulty with their payments. Please contact us immediately to discuss these options, arrange a reinstatement or address any questions regarding the statement at (888) 818-6032.

Please detach bottom portion and return with your payment. Allow 7 - 10 days for postal delivery. Please do not send cash

MONTHLY PAYMENT COUPON

### Amount Due
| Borrower Name(s) | Angela Rivera Angel Rivera |
| Account Number | 0293 |
| Due By 08/01/2015: | $195,862.63 |

$117.49 late fee will be charged after 08/16/2015

Make checks payable to: Select Portfolio Servicing
| Monthly Payment | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Fees | $ |
| Other (Please Specify) | $ |
| Total Amount Enclosed | $ |

SELECT PORTFOLIO SERVICING, INC.
PO BOX 65450
SALT LAKE CITY UT 84165 0450

Change of address or telephone? If so, check here and note changes on back

0293  0000234983  0000246732 2

## IMPORTANT INFORMATION

### Important Mailing Addresses (Please include your account number on all correspondence)

| Regular Payments | Overnight/Express Payments | Notice of Error or Information Request or Qualified Written Request | General Correspondence | Check by Phone | Bankruptcy Correspondence & Notices must be sent to: |
|---|---|---|---|---|---|
| Select Portfolio Servicing, Inc. Attn: Remittance Processing P.O. Box 65450 Salt Lake City, UT 84165 | Select Portfolio Servicing, Inc. Attn: Cashiering Dept. 3815 South West Temple Salt Lake City, UT 84115 | Select Portfolio Servicing, Inc. P.O. Box 65277 Salt Lake City, UT 84165 Fax: (801) 270-7859 | Select Portfolio Servicing, Inc. P.O. Box 65250 Salt Lake City, UT 84165 | (800) 258-8602 Option 1 | Select Portfolio Servicing, Inc. Attn: Bankruptcy Dept. P.O. Box 65250 Salt Lake City, UT 84165 |

**PAYMENT INSTRUCTIONS** Paying your mortgage on time is an important obligation, so please pay on or before the payment due date. Payments are not considered paid until received and posted to your account. Please reduce the late charge on any payment made after the late payment due date noted on your statement. Postal delays do not result in a waiver of late charges, so please allow adequate time for mail service. If you don't pay on or before 3 p.m. MT on the payment due date, your loan will be considered delinquent [NOTE: If you are currently sending all or part of your payment to the bankruptcy trustee, please disregard this Select Portfolio Servicing, Inc. payment address for that portion you are sending to the trustee.] We do not accept payments in cash.

**APPLICATION OF PAYMENTS** If you are current in making your payments, we will apply payments according to your Note. If you are delinquent, we apply payments to the oldest outstanding payments that are due under your Note.

**LOAN REPRESENTATIVES** If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8602 (Monday - Thursday, 8 a.m. - 11 p.m. ET; Friday, 8 a.m. - 9 p.m., ET; Saturday, 8 a.m. - 2 p.m. ET)

**AUTOMATED CONVERSION OF YOUR CHECKS TO ACH DEBIT ENTRIES AND RETURNED CHECKS OR DEBITS** When you provide us a check, you authorize us to use the information from your check to make a one time Electronic Funds Transfer from your bank account. When we use your check to make an Electronic Funds Transfer, funds may be withdrawn from your account quickly, as soon as the day we receive your check. You will not receive your check back from your financial institution. If there are insufficient funds in your account we will reprocess the amount of any such returned payment that we had credited to your mortgage. You authorize us to charge you a fee of up to twenty-five dollars ($25.00) as allowable by state law and collect that amount from an Electronic Funds Transfer from your bank account.

**CREDIT REPORTING** We furnish information to consumer reporting agencies about your compliance with the terms of your Note and Mortgage. If you believe such information is inaccurate you may dispute it by calling or writing the Customer Service Center at the address listed above for notice of error or with the consumer reporting agency.

**NOTICE OF ERROR OR INFORMATION REQUEST OR QUALIFIED WRITTEN REQUEST** If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All notices of Error or Information Requests must be sent to the address listed above in the important mailing addresses section, as this is not exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal Law

**HUD APPROVED HOUSING COUNSELORS** The US Department of Housing and Urban Development (HUD) sponsors approved housing counseling agencies that provide free counseling services to citizens. Counselors can help you assess your financial situation and determine what options are available to you. To find a HUD approved counselor near you, call (800) 569-4287 or visit the HUD website at www.hud.gov/local/index.cfm. You may also be eligible for assistance from the Homeownership Preservation Foundation, which you may reach at (888) 995-HOPE (4673). SPS also works with housing counselors through Hope LoanPort® (www.hopeloanportal.org), and with customers through Homeowner Connect™ (www.homeownerconnect.org)

**SPECIAL REQUEST AND ADDITIONAL FEES**

| Check by Phone (EZPay) | $15.00 |
|---|---|
| Returned Check Fee | Up to $25.00 |
| Express Mail Fee | Actual Charge Incurred |

This fee schedule does not contain all fees that may be charged for services rendered. The actual fee charged to a particular customer may be different based upon custom requirements under state law, agency guidelines (e.g., FHA, VA) or other relevant criteria.

**LOAN PAYOFFS** Payoff information may be requested verbally by calling the Customer Service toll free number printed on this statement, by faxing your requests to (801) 269-4262 or by mailing your request to P.O. Box 65250, Salt Lake City, UT 84165-0250. If you do not receive your payoff quote within 5 business days of placing your request, please call our Customer Service Department.

**HOME OWNER INSURANCE** You are required to maintain Homeowners Insurance (and if required, Flood Insurance) at all times during the term of your Mortgage and provide or ask your insurance agent each year to provide us copies of all renewal policies and services to the address shown below at least 30 days before the date your existing policy expires. It is important for you to remember that if we do not receive a copy of your renewal or replacement policy, SPS may obtain coverage to protect its interest in the property. The coverage provided for this insurance may be different and more expensive than your expired coverage. We will only do this after we have notified you of your failure to maintain coverage. It is possible we may obtain certain benefits from this insurance placement coverage.

All insurance information (including your account number) should be mailed or faxed to:
Insurance Service Center; PO Box 7277, Springfield, OH 45501 Fax (866) 801-0177.

**REAL ESTATE TAX** If you have established an escrow account with us for taxes, you should keep copies of any tax bills you receive for your personal records. We have engaged a Tax Service to receive your tax bills, and we will pay taxes out of your escrow account to the extent there are sufficient balances in your escrow account. If you receive any special assessment bills, you should send them to our Tax Service Center address shown below. Special bills include:

- An area defined as a "Homeowner Area" where your local tax office will not send us the tax bill
- Any special assessments on your property in addition to your regular Real Estate tax bills
- Any adjustments to your tax bills

Tax Service Center: PO Box 3511, Covina, CA 91722

**SPS CONSUMER OMBUDSMAN SERVICES** If you have an unresolved issue with SPS and you have exhausted other customer service options, please contact our Consumer Ombudsman Department at (866) 662-0035 or through other methods found on www.spservicing.com

### COMMON ABBREVIATIONS

| INT | Interest |
|---|---|
| FC or FRC | Foreclosure |
| BK | Bankruptcy |
| BPO | Broker Price Opinion |
| MISC DISR | Disbursement from escrow account for other than escrow item (E.g. Analysis Refund, Payoff Refund) |

This content of abbreviations listed does not contain all abbreviations that may appear in the "Activity this Period" section. For more information please refer to the Fee Schedule and Definition document located at www.spservicing.com

---

### HAS YOUR ADDRESS CHANGED? IF SO, PLEASE COMPLETE THIS FORM

Mailing Address _____

City _____ State _____ Zip _____

Home Phone _____ Business Phone _____

All Borrower's Signature Required For Address Change

_____          _____
Borrower's Signature                     Co-Borrower's Signature

Case 3:16-cv-03112-PGS-TJB    Document 1-4    Filed 05/31/16    Page 4 of 5 PageID: 56

**SPS** SELECT Portfolio SERVICING, Inc.

P O Box 65250
Salt Lake City, UT 84165 0250
www.spservicing.com

Mortgage Statement
Statement Date:07/29/2015
Page 3 of 3

Customer Service : (800) 258-8602
Monday - Thursday  8:00AM - 11:00PM ET
Friday                    8:00AM - 9:00PM ET
Saturday                8:00AM - 2:00PM ET

Account Number ████0293

### Transaction Activity continued from Page 1 (05/01/2015 to 07/29/2015)

| Date | Description | Principal Balance | Interest | Taxes & Insurance | Late Charges | Other Fees | Expenses Pd by Servicer | Total | Insurance Proceeds |
|------|-------------|-------------------|----------|-------------------|--------------|------------|-------------------------|-------|--------------------|
| 07/21 | FC COSTS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,896.24 | 1,896.24 | 0.00 |
| 07/21 | DEB DISARRED BAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (12,132.33) | (12,132.33) | 0.00 |
| 07/21 | REO REPAIRS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | 1,200.00 | 0.00 |
| 07/21 | YARD MAINTENANCE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,212.00 | 1,212.00 | 0.00 |
| 07/21 | TITLE LINE CHGS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| 07/21 | REO CERT LEASING | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 75.00 | 0.00 |
| 07/21 | PROPERTY PRESV | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,215.28 | 2,215.28 | 0.00 |
| 07/21 | REKEY CHGS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.03 | 125.03 | 0.00 |
| 07/21 | PROP INSPECTION | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 639.60 | 639.60 | 0.00 |
| 07/21 | FC COSTS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,683.44 | 1,683.44 | 0.00 |
| 07/21 | FC ATTY FEES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 664.25 | 664.25 | 0.00 |
| 07/21 | WINTERIZE PROP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 150.00 | 0.00 |
| 07/29 | ENDING BALANCE | $193,748.39 | $152,427.37 | $84,779.52 | $0.00 | $0.00 | 37,875.52 | $562,833.76 | 319,682.799 |

### Important Messages

If there is a balance under Expenses Paid by Servicer, it means we have paid certain expenses on your behalf due to the delinquent status of your account.  You are responsible to reimburse us for these amounts plus interest, which may be billed at the note rate.

Due to the delinquent status of your loan a property inspection and/or valuation report was ordered and you are responsible to reimburse us for the amounts plus interest, which may be billed at the note rate.

Under the Servicemembers Civil Relief Act if you or a family member has been deployed to active duty, you may be eligible for certain protections regarding your mortgage loan.  Please contact us at (800) 258-8602 to discuss these protections.

* Loan Due Date: If this date is different from your Payment Due Date, it means that you are past due and owe payments from previous months.

# HOW TO READ YOUR MONTHLY STATEMENT

Your billing statement is designed to provide you with all the information you need to track account activity such as payments made or fees or expenses that we may pay on your behalf. It also contains important messages that are tailored to the way you pay your account

Please make certain that your name and address are shown correctly on the statement. You may call us at 1-800-258-8602 for questions about your account.

 **Statement Date:** Your statement reflects all account activity as of this date. Transactions made after this date will appear on your next statement

 **Account Information**

**Loan Due Date:** If this date is different from your Payment Due Date, it means that you are past due and owe payments from previous months.

**Payment Due Date:** The date your payment is due.

**Amount Due:** This is the total amount you owe as of the statement date

 **Explanation of Amount Due**

**Regular Monthly Payment:** This is the amount due for the current month. If this amount is different than the Total Amount Due, then you are either past due or have unpaid late fees or other charges and fees.

**Unpaid Late Charges:** If you paid after the Late Payment Due Date, you were charged a Late Payment.

**Other Charges and Fees:** This amount includes return check fees, accrued interest on advances, and other items identified in the transaction activity as expenses paid by servicer that we have made on your behalf. These are amounts you owe in addition to the Regular Monthly Payment and even though this amount is not required to bring your account current, it would be included in a payoff total.

**Unapplied Payment(s):** If you are behind in your payments, partial payments or overpayments are treated as unapplied funds and held separately in your account until we receive enough for a full regular payment of principal & interest, at which time we will credit your account for the full payment of principal and interest

**Total Amount Due:** This is the total amount you owe as of the statement date.

 **Transaction Activity:** This section shows the beginning balance and the ending balance for each category listed, as well as all activity in your account during the statement period

 **Delinquency Notice:** This section will only appear if your loan is delinquent. It includes recent account history and important information about the status of your loan

 **Important Messages:** This section includes messages that address your payment status, as well as other messages to help you understand your statement.

 **Monthly Payment Coupon:** This is the most important part of the statement. It shows the total amount due and the due date.

 **Late Payment Due Date:** The date a late charge will be assessed if your payment has not been received.

 **Total Amount Enclosed:** This is the amount you are sending us this month.



We hope you find the information in this summary helpful. You can find more information including Frequently Asked Questions on our website, www.spservicing.com, or you may call a Customer Service Account Representative at 1-800-258-8602.

In accordance with Federal Law you will find the address for the submission of Notices of Error, Information Requests, or Qualified Written Requests on the back of your monthly statements.