UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL RIVERA et al., | Civil Action No: |
| Plaintiffs, | 16-cv-3112 (PGS)(TJB) |
| v. | |
| SELECT PORTFOLIO SERVICING, INC. et al., | MEMORANDUM AND ORDER |
| Defendants. | |

SHERIDAN, U.S.D.J.

This matter is before the Court on Defendant's motion for reconsideration. (ECF No. 50). Defendant seeks for the Court to address Defendant's remaining arguments in their Motion to Dismiss: (1) that Plaintiff failed to provide pre-suit notice of their dispute; and (2) that Plaintiff failed to state a cognizable claim for relief. For the reasons set forth below, Defendant's motion for reconsideration is denied.

### BACKGROUND

Plaintiffs Angel and Angela Rivera filed this Second Amended Complaint (SAC), individually and on behalf of a putative class of people, alleging Defendant Select Portfolio Servicing, Inc. (SPS) violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA). (SAC at ¶¶ 18-19). SPS is a Utah-based a mortgage servicer that "specializes in handling delinquent and defaulted mortgage loans." (*Id.* at ¶¶ 6-8). Specifically, Plaintiffs maintain that SPS is a "special servicer" and "debt collector," as defined by 15 U.S.C. § 1692a(6). (*Id.* at ¶¶ 7,13).

1

In July 2004, Plaintiffs obtained a $328,000 mortgage loan from Countrywide Home Loans, Inc. for their property at 56 Cumberland Avenue, Verona, New Jersey. (*Id.* at ¶ 29-30). By early 2007, Plaintiffs encountered financial difficulties and were unable to make timely payments. (*Id.* at ¶ 33). On March 23, 2007, a foreclosure action was filed against Plaintiffs in New Jersey Superior Court. (*Id.* at ¶ 34). Three days later, March 26, 2007, Plaintiffs filed for Chapter 13 bankruptcy. (*Id.* at ¶ 35). However, as their financial situation continued to worsen, Plaintiffs were forced to convert their bankruptcy protection to a petition under Chapter 7 in July 2009. (*Id.* at ¶ 39). Thereafter, Plaintiffs obtained a full discharge of all their debts from Countrywide. (ECF No. 34 at 51).

On July 9, 2015, Plaintiffs received a "Welcome Letter" from SPS, notifying them that their mortgage obligation would be transferred to SPS for servicing and collection. (*Id.* at ¶ 42; ECF No. 34 at 54). The letter contains a "Notice of Assignment, Sale or Transfer of Servicing Rights," which states in pertinent part:

> IF YOU HAVE FILED BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, PLEASE BE ADVISED THAT THIS STATEMENT DOES NOT REPRESENT AND IS NOT INTENDED TO BE A DEMAND FOR PAYMENT. THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. YOU SHOULD CONTACT LEGAL COUNSEL REGARDING YOUR OBLIGATION, IF ANY, TO PAY ON THE MORTGAGE LOAN.

(ECF No. 34 at 55).

On July 24, 2015, SPS sent Plaintiffs a "Validation of Debt Notice," which indicated that Plaintiffs owe $578,922.50. (ECF No. 34 at 57). The letter also states, "Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt, or any part of it. If you don't dispute it within that period, we will assume that it is valid." (*Id.*) Less than a week later, July 29, 2015, SPS sent Plaintiffs a monthly mortgage statement indicating that an outstanding payment of $195,862.63 was due by August 1, 2015. (ECF. No 34 at 60). The

2

statement also included a "Notice of Error," which instructed Plaintiffs on how to correspond with SPS in the event that they believed there was an error with their account. (*Id.* at 61).

Plaintiffs, individually and behalf of the putative class, bring this cause of action under the FDCPA. Specifically, under Count One, Plaintiffs maintain that Defendant violated Section 1692g of the FDCPA by failing to provide disclosures to Plaintiffs within five days of sending the July 9, 2015 letter. (*Id.* at ¶ 78-80). Additionally, Plaintiffs claim Defendant committed various misleading and deceptive representations in its "Validation Letter," contrary to Sections 1692e through 1692g. (*Id.* at ¶ 80 (a)-(j)). Under Count Two, Plaintiffs assert, individually, that SPS violated 15 U.S.C. §§ 1692(e), 1692e(2) and 1692e(10) by attempting to collect a discharged debt and that Plaintiffs were subsequently deprived of their "fresh start" under the Bankruptcy Code and were furnished with inaccurate information.

## LEGAL STANDARD

Motions for reconsideration are governed by Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(i). The "extraordinary remedy" of reconsideration is "to be granted sparingly." *A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). The Rule "does not contemplate a Court looking to matters which were not originally presented." *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 634 (D.N.J. 1996) (quoting *Florham Park Chevron, Inc., v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988)).

The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotincki*, 779 F.2d 906, 909 (3d Cir. 1985). "Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior

3

to the entry of judgment." *NL Indus., Inc.*, 935 F. Supp. at 516. Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *See, North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and citations omitted). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986); and only when "dispositive factual matters or controlling decisions of law" were brought to the Court's attention but not considered. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

## ANALYSIS

### I. Failure to Provide Pre-Suit Notice

Defendant first seeks for the Court to reconsider denial of its Motion to Dismiss on the basis that Plaintiffs failed to provide pre-suit notice, as was required under their mortgage. Plaintiffs contends the pre-suit notice does not apply, since their cause of action is unrelated to the mortgage. The Court agrees.

Paragraph twenty of Plaintiffs' mortgage states:

Neither Borrower nor Lender may commence, join, or be joined to any judicial (as either an individual or litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(ECF No. 34 at 27).

"When claims arise from actions taken pursuant to the contract or agreement at issue, a valid notice and cure provision is a precondition to the suit." *Taub v. World Fin. Network Bank,*

950 F. Supp. 2d 698, 702 (S.D.N.Y 2013). However, when a party's cause of action is based on a violation of federal law, rather than the contract or agreement, courts have held that the notice and cure provision does not apply. *Id.* (finding that a notice and cure provision did not apply to the plaintiff's actions brought under the Truth in Lending Act); *see St. Breaux v. United States Bank*, 919 F. Supp. 2d 1371, 1375 (S.D. Fl. 2013) (same); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1008 (N.D. Ill. 2006) ("Enforcement of the notice and cure provision in Wells Fargo's contract would utterly defeat this central purpose of TILA"). Here, Plaintiffs causes of action are not predicated on any purported violation of the mortgage, nor does the Complaint allege as much; instead, Plaintiffs claim that Defendant has violated the FDCPA.

The Court also notes that Defendant's reliance on two unpublished cases from other jurisdictions, in support of its contention that the notice provision remains enforceable, are factually inapposite. In *Johnson v. Countrywide Home Loans, Inc.*, No. 10-1018, 2010 U.S. Dist. LEXIS 131112, at *5-7 (E.D. Va. Dec. 10, 2010), the district court dismissed the plaintiff's claims, which included violation of the FDCPA, since she failed to comply with the notice provisions in the Deed of Trust. However, in *Johnson*, the trial court concluded that "*all* of Plaintiff's allegations arise from actions taken pursuant to the Deed of Trust. Therefore, because Plaintiff did not provide notice in accordance with the Deed of Trust," the defendant's motion to dismiss was granted. *Id.* (emphasis in original). Similarly, in *Giotta v. Ocwen Fin. Corp.*, No. 15-00620, 2016 U.S. Dist. LEXIS 113320, at *13-14 (N.D. Cal. Aug. 24, 2016), the district court, citing *Johnson*, held that since the plaintiff's claims arose from the terms of the Deed of Trust, "[their] claims fall squarely within the ambit of the notice-and-cure provision." Here, however, the Court concludes that Plaintiffs' claim do not arise from the terms of the mortgage; as such, Defendant's argument on

this issue is unpersuasive. Therefore, given that Plaintiffs' cause of action does not arise from the mortgage, the notice and cure provision does not apply.

## II.     Failure to State a Claim

Defendant next seeks reconsideration of the Court's denial of its Motion to Dismiss, since Plaintiffs failed to allege a cognizable claim for relief. "To state a claim under the FDCPA, a plaintiff must allege that '(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Thomas v. Youderian*, 232 F. Supp. 3d 656, 671 (D.N.J. 2017) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Plaintiffs have clearly alleged the first two factors and Defendant does not contest this. However, Defendant disputes that its two letters to Plaintiffs constituted an attempt to collect debt, and maintains that it has not violated any provision of the FDCPA.

In analyzing communications between purported debt collectors and plaintiffs, courts routinely apply the "least sophisticated debtor" standard. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015); *Youderian*, 232 F. Supp. 3d at 671. "We use the 'least sophisticated debtor' standard in order to effectuate 'the basic purpose of the FDCPA: . . . to protect 'all consumers, the gullible as well as the shrewd' . . . .'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 219 (3d Cir. 2008) (citation omitted). "Although the 'least sophisticated debtor' standard is a low standard, it prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (internal quotation marks and citations omitted).

While Plaintiffs' SAC relies heavily on the "Validation of Debt Notice" letter, in seeking relief under several provisions of the FDCPA, the parties' briefing focuses on Section 1692g and the "Welcome Letter." Defendant argues that Plaintiffs' claims, under Section 1692g, cannot succeed since the "Welcome Letter" did not constitute an attempt to collect debt.

The FDCPA requires debt collectors to provide certain information to the debtor, relating to the collection of the debt, or include a follow-up communication within five days of the initial communication. *See* 15 U.S.C. § 1692g(a). Specifically, the notification must include the following:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* To be within Section 1692g(a), "an animating purpose of the communication must be to induce payment by the debtor." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013). "Put differently, activity undertaken for the general purpose of inducing payment constitutes debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014).

Here, the Court is unpersuaded by Plaintiffs' argument that the "Welcome Letter" constituted an initial communication in connection with the debt, under Section 1692g. The first

sentence of the letter expressly states that the purpose of the letter is to inform Plaintiffs of the pending transfer of their mortgage:

> We are pleased to inform you that the servicing of your 1st mortgage loan will be transferred from Bank Of America N A to Select Portfolio Servicing, Inc. (SPS) effective 07/16/2015.

(ECF No. 34 at 54). Although the letter notes Plaintiffs' potential obligations to make future payments, the second page explicitly disclaims that it is not a demand letter for payment: "If you have filed bankruptcy or have been discharged in bankruptcy, please be advised that this statement does not represent and is not intended to be a demand for payment." (*Id.* at 55) (caps omitted). As such, this letter illustrates that Defendant was acting "in its capacity as a loan servicer, not in its capacity as a debt collector, and thus its 'animating purpose' was not 'to induce payment by the debtor.'" *McDermott v. Nationstar Mortg. LLC*, 143 F. Supp. 3d 290, 302 (E.D. Pa. 2015) (quoting *Simon*, 732 F.3d at 266). Therefore, the "Welcome Letter" does not constitute a communication under Section 1692g(a), since it was not made in connection with a debt.

However, the Court is satisfied, and Defendant appears to concede, that the "Validation of Debt Notice" letter constitutes a communication under Section 1692g(a). This letter states in pertinent part:

> SPS is responsible for sending your monthly mortgage statements, accepting your monthly mortgage payments, collecting any amount due caused by your default under the terms of your Note or Mortgage and generally administering the terms of your mortgage loan.

(ECF No. 34 at 57). It also includes the amount of debt; the name of the credit of whom the debt is owed; and a statement that Plaintiffs have "thirty (30) days after you receive this letter to dispute the validity of the debt, or any part of it." As such, the "Validation of Debt" notice clearly falls within Section 1692g(a).

Having concluded that the "Validation of Debt Notice" constituted an attempt to collect a debt, this Court is left to consider whether Defendant has violated any provisions under the FDCPA. Plaintiffs present two key arguments, in support of their contention that Defendant violated the FDCPA. First, Plaintiffs contend that the acceleration clause included within the letter was false. Alternatively, Plaintiffs argue that the letter generally made false, deceptive, and misleading representations since it sought to collect a debt that had already been discharged.

Turning first to the "acceleration clause" argument, Plaintiffs assert that the letter's statement that "late changes, and other charges . . . may vary from day to day" is "materially false." Plaintiffs claim that after a loan has been accelerated, late charges may not be collected. New Jersey courts have disfavored the enforceability of such "compound interest" clauses, deeming them inequitable. *See Henderson v. Camden Cty. Mun. Util. Auth.*, 826 A.2d 615, 619 (N.J. Sup. Ct. 2003) ("Because compound interest 'unduly hastens the accumulation of debt,' courts regard it as unfairly 'harsh and oppressive.'"); *Crest Sav. and Loan Ass'n v. Mason*, 581 A.2d 120, 122 (N.J. Super. Ct. Ch. Div. 1990) ("late charges are not allowable after the filing of the foreclosure complaint, because the foreclosure accelerates the total mortgage indebtedness, making monthly payments no longer the applicable form of satisfaction."). However, while the purported acceleration clause would likely be unenforceable, Plaintiffs have failed to demonstrate how the statement was material to their alleged injury. *See United States v. Gaudin*, 515 U.S. 506, 509 (1995) (defining a material statement as one that has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed" (internal quotation marks and citation omitted)). Plaintiffs do not allege that the misstatement affected their decisionmaking and, more importantly, do not claim to have made any additional payments as a result.

However, the Court is satisfied that the "Validation of Debt" letter nevertheless made misleading representations that survive Defendant's motion. When viewing the factual record under the "least sophisticated debtor" standard, it is clear that the letter misrepresented Plaintiffs' debt obligations, contrary to 15 U.S.C. § 1692e, which proscribes false or misleading representations by debt collectors. Defendant's argument that Plaintiffs failed to demonstrate that Defendant intentionally made a false statement is unconvincing. Contrary to Defendant's contention, "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *see also Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012) ("The language of this provision creates a straightforward, objective standard. Nothing suggests that an allowance is to be made for a defendant's lack of knowledge or intent"). Defendant, not Plaintiffs, bore the burden of demonstrating that any alleged "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Defendant has not met its burden.

Lastly, Defendant contends Plaintiffs' complaint is preempted by the Bankruptcy Code. Citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002), Defendant argues that because Plaintiffs claims are based on alleged violations of 11 U.S.C. § 524, they are barred under the Bankruptcy Code. When this matter was first presented to the Court last year, my initial view was an "old school" practice. At first glance, Defendant was allegedly violating a Bankruptcy Court Order and Judgment; as such, relief should be provided by the Bankruptcy Court for contempt. However, the Third and Second Circuit have viewed this issue differently. For example, the Third Circuit has explicitly held that when "FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding,

and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims." *Simon*, 732 F.3d at 274. Similarly, in *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86 (2d Cir. 2016), the Second Circuit held that the Bankruptcy Code does not bar FDCPA claims arising from attempts to collect post-discharge debts. *Id.* at 91, 93. The court explained that, unlike pre-discharge claims, post-discharge debtors are no longer under the protection of the bankruptcy court, which the court "deemed decisive on the preclusion issue prior to discharge." *Id.* at 91. Moreover, the court noted that the Bankruptcy Code does not create a cause of action for violations of a discharge injunction, 11 U.S.C. § 524(a)(2), while it does for violations of the automatic stay provision, 11 U.S.C. § 362(k). *Id.* at 91-92. As such, after concluding that the Bankruptcy Code's discharge injunction did not conflict with FDCPA provisions, the court concluded that the Bankruptcy Code did not preclude the plaintiff's post-discharge FDCPA claims. *Id.*

Here, consistent with *Simon* and *Garfield*, the Court concludes that, given the broad scope of the FDCPA, Plaintiffs were not required to seek relief solely under the Bankruptcy Code.

## ORDER

This matter is before this Court on Defendant's motion for reconsideration; and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this _5_ day of December, 2017,

ORDERED that Defendants' motion for reconsideration (ECF No. 50) is **DENIED**.

_____
PETER G. SHERIDAN, U.S.D.J.

11